## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **LEWIS KEATHLEY,** an individual, resident of St. Louis County, Missouri <br><br> Plaintiff, <br><br> versus <br><br> **SPIRE, INC.,** a Missouri corporation, Principal Office: 700 Market Street St. Louis, Missouri 63101-1829 <br><br> Defendant. | Case No. _____ <br><br> Div. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** plaintiff LEWIS KEATHLEY, and, for his cause of action against defendant SPIRE, INC., states as follows:

### PARTIES

1. Plaintiff Lewis Keathley, an individual, is a resident of St. Louis County, Missouri. As relevant to this case, plaintiff is a white male over the age of 55 years.

2. Defendant Spire, Inc. ("Spire") is a Missouri corporation, headquartered at 700 Market Street in the City of St. Louis, Missouri, claiming to be the fifth largest publicly traded natural gas company in the United States. Spire employs more than 500 employees.

### FACTS

3. Plaintiff has been employed by defendant Spire, Inc. since June, 2015, as Senior Regulatory Analyst in the defendant's Regulatory and External Affairs Department ("Regulatory Department"). This Regulatory Department is the group that interacts with the Missouri Public Service Commission ("PSC") on behalf of the company. Through the PSC regulatory process of

filings, hearings, and receipt of testimony, the Regulatory Department is the "face" of company with the PSC, as the company seeks to set rates which drive the profitability of the company.

4. The most important and highest profile project for a regulatory department employee in a public utility generally, and defendant Spire in particular, is to prepare for and provide testimony at hearings before the PSC in connection with the utility's request to increase its rates (a "Rate Case"). Plaintiff was highly experienced in preparing evidence and presenting testimony at rate cases in his employment prior to and after his joining defendant Spire. Since 2009, starting with his tenure at American Water, he has testified in multiple utility rate cases in Indiana and Ohio, along with rate cases in Tennessee and Missouri. He was explicitly hired by Spire/Laclede Gas because of in large part, his experience testifying in Rate Cases. Presenting testimony on behalf of the utility is the highest profile part of a Rate Case resulting in bonuses and advancement/promotions from successfully testifying in a Rate Case.

5. In the first Rate Case to follow his employment by defendant, in 2017, Plaintiff provided direct and rebuttal testimony regarding several topics, including rate base – an item of $2 billion significance. As a result of plaintiff's successful efforts, he received a $15,000 stock bonus.

6. On October 15, 2020 Plaintiff received from his direct supervisor, Wes Selinger, a very favorable performance review. Nevertheless, Mr. Selinger informed plaintiff, that plaintiff would not be allowed to testify in the upcoming Rate Case because Selinger's superior Scott Weitzel had instructed him that Weitzel and defendant's "senior management" did "not want another middle aged white guy providing testimony."

7. Thereafter, as predicted, the final witness list excluded plaintiff, but had been expanded to include three white females and one black male, all of whom with less experience

than plaintiff possessed, to present evidence and testify at the Rate Case hearing.

8. On May 4, 2021, after Selinger announced his departure from the employ of defendant, plaintiff had a meeting with Weitzel at which plaintiff reported what Selinger had told him regarding Weitzel's and senior management's eliminating him as a testifying expert for the Rate Case because plaintiff was a "middle aged white guy."  Plaintiff expressed his objection to being the victim of race, age and sex discrimination.

9. Weitzel curtly dismissed plaintiff's concerns and not-so-subtly threatened that plaintiff would be ineligible for upcoming promotion opportunities if he pursued further his concerns about being discriminated against.  Based on this threat, plaintiff did not further pursue the matter, reasonably expecting that, under the circumstances, he would receive fair and non-discriminatory consideration for promotion as Weitzel seemed to indicate.  However, unbeknownst to plaintiff, Weitzel was committed to following defendant's discriminatory "diversity, equity and inclusion" policy, and harbored a retaliatory animus toward plaintiff for having the temerity to challenge the discrimination reliably reported to plaintiff by his supervisor Selinger.

10. Later that month (on May 20, 2021) during a conference concerning rebuttal testimony in the Rate Case, defendant's discriminatory motivation was again explicitly and brazenly expressed.  Present at the conference among others were Weitzel, defendant's Associate General Counsel Goldie Bockstruck, and plaintiff.  It was suggested that a female employee, Julie Trachsel, with limited experience in regulatory work, give testimony, Ms. Bockstruck stated "Scott, you will like having Julie testify because she is another female." Weitzel expressed his agreement.

11. In October, 2021, as Weitzel previously predicted, promotional opportunities

3

were posted for the Regulatory Department. Plaintiff applied for the position Manager, Tariffs & Rates and was interviewed by Weitzel, Bockstruck and others in November 2021.

12. In mid-December 2021, before a result of the interview was announced, during the annual Regulatory holiday luncheon, Weitzel again expressed defendant's discriminatory motivation while monologuing about the most recent Rate Case (the one from which plaintiff was excluded from testifying), stating that in the recent Rate Case he (Weitzel) had "corrected" the "problem" of having a "bunch of old guys" testify and participate as occurred in the 2017 Rate Case.

13. Shortly thereafter, on December 16, 2021, having heard nothing regarding the promotion he applied for, plaintiff scheduled a "touch base" call with Weitzel. During that call, Weitzel informed plaintiff that he was being passed over for promotion altogether. Plaintiff was the only member of the Regulatory Department not to receive a promotion. In fact, of all the persons to testify in the Rate Case – including those from *outside* the Regulatory Department – *none* of the so called "middle-aged white guys" received promotions. All others – females, racial minorities, and Weitzel himself – received promotions. Moreover, the position for which plaintiff applied and was most qualified – Manager, Tariffs and Rates – was given to Ms. Trachsel, who lacked regulatory experience. Furthermore, Weitzel told plaintiff that he should not expect further advancement in the company.

14. To add insult to injury, Weitzel assigned plaintiff to train Ms. Trachsel and to oversee and correct her work product while she learned the position for which she displaced plaintiff supposedly because she was more qualified.

15. Immediately thereafter, pursuant to company policies, and after consultation with an HR Managing Director, plaintiff submitted a complaint of discrimination to defendant's

Compliance Hotline. The human resources department then purported to undertake an investigation, but their effort was a sham as they refused to interview Wes Selinger, Goldie Bockstruck and other key witnesses, despite plaintiff's urgent request that they do so. HR representatives communicated to plaintiff that their investigation had a predetermined outcome, stating that the witness interviews plaintiff sought would not change the outcome. Ultimately, the human resources department refused to address the discrimination and retaliation against plaintiff. Upon information and belief, this conduct of the HR department resulted from an express mandate by the company's CEO to promote discriminatory employment policies to fulfill her "Diversity, Equity and Inclusion pledge."

16. Plaintiff was denied the promotion explicitly because of his race, color, sex and age because of the direct expression of discriminatory motive by Weitzel to Selinger, Bockstruck, and, upon information and belief, other employees with the Regulatory Department, including to plaintiff himself.

17. Plaintiff denial of promotion was also motivated by retaliation for plaintiff's having confronted Weitzel about his discriminatory actions in blocking his ability to testify at the Rate Case hearing. In further retaliation, defendant demeaned and humiliated plaintiff by tasking him to train the person in the job for which he was rejected.

18. Moreover, defendant and Weitzel have engaged in a continuing pattern of retaliation against plaintiff in, among other actions, stripping him of all significant responsibilities and relegating him to performing menial tasks far below his education, experience, and expertise. Weitzel further retaliated when, in plaintiff's most recent annual performance review, Weitzel acknowledged that there were inaccuracies in his negative review of plaintiff's performance, but he refused to correct them, stating, "we can get the facts right, but

5

the output will be the same."

19. The foregoing discriminatory actions of Weitzel and Spire "upper management" were pursuant to an odious policy determined and imposed from the highest levels of the corporation to discriminate against white males, in particular – a policy deceptively and euphemistically named "Diversity, Equity and Inclusion" ("DEI").

20. In Spire's 2020 "Corporate Social Responsibility" report ("CSR Report") defendant boasts that "Spire's CEO is fulfilling a promise" that she made "to foster a more diverse and inclusive workforce," that she committed to when she signed the "CEO Action for Diversity and Inclusion pledge."  This "pledge" explicitly calls for discrimination on the pretext that "persistent inequities… underscore our urgent, national need to address and alleviate racial, ethnic and other tensions and to promote diversity within our communities."  The policy was not based on any adjudication or finding that defendant had engaged historically in discriminatory practices or patterns of discrimination.

21. Defendant's CEO/President Suzanne Sitherwood pledged "to address… needs of our diverse employees… and increase equity for all, including Blacks, Latinos, Asians, Native Americans, LGBTQ, disabled, veterans and women."  These and other promises and the policies that followed have created a culture of discrimination at Spire that prioritizes and prefers the advancement of employees that fit into the specified preferred identity groups at the expense of the so called "middle-aged white guys" like plaintiff.

22. The 2020 CSR Report touts "New enhancements to our system [that] allow us to track and ensure that open positions are applied for by a diverse group of candidates… [to] pursue minority representation for open positions."  Thus, by intention, design and in practice, defendant's DEI Policy discriminates on the basis of "ethnicity, race… gender, nationality…

religion… from frontline employees to the board…" [2020 CSR Report, at 19.]

23. Further evidencing defendant's illegal obsession with discrimination based on race, sex, etc., in its 2021 proxy statement defendant highlights the racial and sex demographics of its board of directors.  In the 2020 CSR Report defendant breaks down, by percentage, the proportion of its employees that are "Male," "Female," "Black or African American," "White," and "All other."  The 2020 CSR Report further states that defendant has implemented "Unconscious Bias Training" that consists of teaching employees that they are inherently discriminatory on the basis of race, color, sex, gender, etc. in their attitudes toward others.

24. Defendant's CEO/President Sitherwood also pledged to her other "CEO Action for Diversity and Inclusion" pledge-takers that defendant would "create accountability systems" to track defendant's "progress" toward building "more diverse and inclusive workplace," and she pledged "to share regular updates" regarding that "progress" with the other corporate CEO's who also took the "pledge."

25. Far from embodying the "color-blind," "gender-blind," and neutral employment practices required by the law, defendant's policy and its implementation – directed down through the organization by the very top of the corporation – is obsessed with categorizing persons according to race, color, sex, gender, religion, sexual orientation, etc.  Defendant does not see its employees as persons – unique individuals of paramount dignity, who have strived to advance their careers by hard work, loyalty, dedication, and, above all, demonstrated achievement and accomplishment.  Rather, defendant's ultimate motivation – that supersedes the others – is what demographic category they fall into so that CEO/President Sitherwood can keep her "pledge" in her "CEO Action for Diversity and Inclusion" club.

26. As a direct, proximate and intended result of the defendant's wrongful conduct

aforesaid, plaintiff has been injured in his person, reputation, profession, including mental anguish, emotional distress, and physical stress, and has suffered economic damages in lost income, bonuses, and career advancement opportunities.

## JURISDICTION AND VENUE

27. Within 180 days of the aforesaid discrimination and retaliation, on or before May 23, 2022, plaintiff filed a Complaint/Charge of Discrimination with the Missouri Commission on Human Rights (MCHR). A true and accurate copy of the MCHR's Notice That a Complaint Has Been Filed is attached hereto as Exhibit A.

28. Within 180 days of filing the Complaint/Charge with the MCHR, on or about November 10, 2022, plaintiff requested issuance of a Right to Sue Letter. On February 8, 2023, the MCHR issued to plaintiff its Notice of Right to Sue. A true and accurate copy of the said Notice of Right to Sue is attached hereto as Exhibit B.

29. Plaintiff has filed this Complaint within 90 days following the issuance of the aforesaid Notice of Right to Sue.

30. Plaintiff brings this action under Section 703(a)(1) of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(a)(1) *et seq*. and the Age Discrimination in Employment Act of 1967 29 U.S.C. § 621 to 633a. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents a question of federal law.

31. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the defendant's headquarters is located within this district and this district is where a substantial part of the events giving rise to plaintiff's claims occurred.

## COUNT I

### VIOLATION OF CIVIL RIGHTS ACTS OF 1964, AS AMENDED
### RACE, COLOR, SEX DISCRIMINATION

32. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

33. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

34. Defendant's above stated actions were motivated by Plaintiff's race (Caucasian), and/or color (white), and/or sex (male).

35. Plaintiff has suffered damages.

36. Defendant has acted intentionally, with evil motive, and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

37. Plaintiff respectfully prays that this Court adjudge defendant liable for unlawful discrimination in violation of the Title VII of the Civil Rights Act of 1964, as amended, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT II

### VIOLATION OF CIVIL RIGHTS ACTS OF 1964, AS AMENDED
### RETALIATION

38. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

39. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

40. Defendant's above stated actions were motivated by a desire to punish and retaliate against plaintiff for his opposing and objecting to and reporting to defendant's Compliance Hotline/corporate HR for redress of defendant's unlawful discrimination (under Title VII of the Civil Rights Act of 1964, as amended) against him.

41. Plaintiff's protected activity in opposing discrimination, including among other things making an internal report of discrimination, and later filing a charge of discrimination, was the motivation for defendant's actions.

42. Plaintiff has suffered damages.

43. Defendant has acted intentionally, with evil motive, and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

44. Plaintiff respectfully prays that this Court adjudge defendant liable for unlawful retaliation in violation of the Title VII of the Civil Rights Act of 1964, as amended, and grant all relief allowed under the law, as set forth in the below prayer.

## **COUNT III**

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)
### AGE DISCRIMINATION

45. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

46. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

47. Defendant's above stated actions were motivated by Plaintiff's age within the meaning of the ADEA.

48. Plaintiff has suffered damages.

49. Defendant has acted intentionally, with evil motive, and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

50. Plaintiff respectfully prays that this Court adjudge defendant liable for unlawful discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT IV

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) RETALIATION

51. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

52. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

53. Defendant's above stated actions were motivated by a desire to punish and retaliate against plaintiff for his opposing and objecting to and reporting to defendant's Compliance Hotline/corporate HR for redress of defendant's unlawful discrimination (under the ADEA) against him.

54. Plaintiff's protected activity in opposing discrimination, including among other things making an internal report of discrimination, and later filing a charge of discrimination, was the motivation for defendant's actions.

55. Plaintiff has suffered damages.

56. Defendant has acted intentionally, with evil motive, and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

57. Plaintiff respectfully prays that this Court adjudge defendant liable for unlawful

discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT V

### VIOLATION OF MISSOURI HUMAN RIGHTS ACT
### RACE DISCRIMINATION

58. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

59. Plaintiff is an employee, and defendant is an employer, within the meaning of the Missouri Human Rights Act, RSMo Chapter 213.

60. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

61. Plaintiff's race – Caucasian – was the motivating factor in defendant's actions.

62. Plaintiff has suffered damages.

63. Defendant has acted intentionally, with evil motive and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

64. Plaintiff respectfully prays that this Court adjudge defendant liable for race discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the below prayer

## COUNT VI

### VIOLATION OF MISSOURI HUMAN RIGHTS ACT
### COLOR DISCRIMINATION

65. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

66. Plaintiff is an employee, and defendant is an employer, within the meaning of the Missouri Human Rights Act, RSMo Chapter 213.

67. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotions and work opportunities, and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

68. Plaintiff's color – white – was the motivating factor in defendant's actions.

69. Plaintiff has suffered damages.

70. Defendant has acted intentionally, with evil motive and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

71. Plaintiff respectfully prays that this Court adjudge defendant liable for color discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT VII

### VIOLATION OF MISSOURI HUMAN RIGHTS ACT
### SEX DISCRIMINATION

72. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

73. Plaintiff is an employee, and defendant is an employer, within the meaning of the Missouri Human Rights Act., RSMo Chapter 213, RSMo Chapter 213.

74. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotion and work opportunities and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

75. Plaintiff's sex – male – was the motivating factor in defendant's actions.

76. Plaintiff has suffered damages.

13

77. Defendant has acted intentionally, with evil motive and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

78. Plaintiff respectfully prays that this Court adjudge defendant liable for sex discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT VIII

### VIOLATION OF MISSOURI HUMAN RIGHTS ACT
### AGE DISCRIMINATION

79. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

80. Plaintiff is an employee, and defendant is an employer, within the meaning of the Missouri Human Rights Act., RSMo Chapter 213, RSMo Chapter 213.

81. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotion and work opportunities and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

82. Plaintiff's age was the motivating factor in defendant's actions.

83. Plaintiff has suffered damages.

84. Defendant has acted intentionally, with evil motive and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

85. Plaintiff respectfully prays that this Court adjudge defendant liable for age discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the below prayer.

## COUNT IX

### VIOLATION OF MISSOURI HUMAN RIGHTS ACT
### RETALIATION

86. Plaintiff incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

87. Plaintiff is an employee, and defendant is an employer, within the meaning of the Missouri Human Rights Act., RSMo Chapter 213, RSMo Chapter 213.

88. Defendant denied plaintiff a promotion to Manager, Tariffs and Rates, denied him other promotion and work opportunities and subjected him to a humiliating and hostile work environment and otherwise treated plaintiff adversely in terms of conditions of his employment.

89. Plaintiff's protected activity in opposing discrimination, including among other things making an internal report of discrimination, and later filing a charge of discrimination, was the motivation for defendant's actions.

90. Plaintiff has suffered damages.

91. Defendant has acted intentionally, with evil motive and/or in reckless disregard of the plaintiff's rights, justifying punitive damages.

92. Plaintiff respectfully prays that this Court adjudge defendant liable for retaliation in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the below prayer.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this Court grant the following relief:

     A.     Actual damages, including both economic and non-economic damages, including physical distress and emotional distress damages;

     B.     Punitive damages;

     C.     Pre-judgment and post-judgment interest at the maximum legal rate;

     D.     Declaratory and injunctive relief barring defendant from further violations of law, deleting negative performance reviews, and granting plaintiff the promotional and bonus opportunities which he has been denied;

     E.     Plaintiff's costs herein expended;

     F.     Reasonable attorney fees and expenses incurred herein;

     G.     Any other and further legal and/or equitable relief that the Court deems just and proper.

Respectfully submitted,

QUINLAN LAW FIRM, LLC

*/s/ Michael D. Quinlan*
Michael D. Quinlan, #35314
2526 Barrett Springs Drive, # 100
St. Louis, MO 63021
(314) 223-6035; FAX: (314) 261-9393
quinlanlawfirm@gmail.com

***Attorney for Plaintiff***